UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| PAMELA SCHAU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-1262 |
| | ) |
| THE BOARD OF EDUCATION OF | ) |
| PEORIA PUBLIC SCHOOL DISTRICT | ) |
| NO. 150, | ) |
| | ) |
| Defendant. | ) |

# O P I N I O N

### Defendant's Motion in Limine No. 1

Defendant has moved in limine for an order barring the introduction of any evidence or information from the Illinois Department of Employment Security ("IDES") at trial. Specifically, Plaintiff seeks to offer a determination made by the IDES concerning her eligibility for unemployment insurance benefits following her termination for purposes of establishing that her employer believed that she had engaged in conduct warranting termination.

Illinois law provides that "information obtained from any individual or employing unit during the administration of this Act shall . . . not be used in any court in any pending action or proceeding, [and] not be admissible in evidence in any action or proceeding other than one arising out of this Act." 820 ILCS 405/1900(A). The same prohibitions apply to any "finding, determination, decision, ruling or order (including any finding of fact, statement or conclusion made therein) issued pursuant to this Act. . . ." 820 ILCS 405/1900(B). Although state privileges such as this are not binding as

such in federal litigation pursuant to Fed. R. Evid. 501, the Seventh Circuit has held that the uniqueness of such proceedings counsels against the use of those proceedings in subsequent litigation. *McLendon v. Indiana Sugars, Inc.*, 108 F.3d 789 (7th Cir. 1997); *Wagoner v. J.P. Morgan Chase Bank*, 2014 WL 185759, at *4 (S.D.Ind. Jan. 15, 2014); *Twilley v. International Bedding Corp.*, 2010 WL 1652960, at *9 (N.D.Ind. April 23, 2010); *Smith v. G.M.G. Partners, LLC*, 2002 WL 31749184 at *1 (N.D.Ill. Dec. 3, 2002); . Thus, it is clear that the IDES determination itself is inadmissible at trial in this matter, and Defendant's Motion in Limine No. 1 is granted in this respect.

That being said, if the purpose of seeking to introduce the IDES document is to establish that Defendant took the position that Plaintiff was terminated for cause, it will be admissible for that limited purpose in redacted form if the parties do not otherwise stipulate.

**Plaintiff's First Motion in Limine**

Plaintiff asks the Court to bar Defendant from offering evidence refuting or contradicting: (1) that the District objected to her claim for unemployment benefits; (2) that at the time the District objected to her claim, it believed it had cause to discharge her; and (3) that the District terminated Plaintiff from employment based upon its belief that she had engaged in conduct warranting her discharge. Specifically, Plaintiff argues that these admissions were made in Defendant's Answer to the Complaint and have never been withdrawn. Therefore, she contends that they are binding judicial admissions for purposes of trial.

Defendant concedes that the first issue is not in dispute, but suggests that the issues are nevertheless irrelevant, as the Court has held that Defendant was not prohibited from using the non-causal termination provision of the employment agreement to dismiss any employee even if the District has reason to dismiss for cause. While this is an accurate statement of a portion of the

2

Court's 2/28/14 Order, Defendant attempts to preclude this evidence by ignoring the remainder of the opinion, wherein the Court notes that Plaintiff can demonstrate a denial of due process based on a showing that the District purportedly terminated her under the non-causal provision and then later took a position inconsistent with that decision in order to deprive her of her right to a hearing. In other words, for what it's worth, Plaintiff will be allowed to try to show that her removal under the non-causal provision was merely a pretext to avoid a due process proceeding for the Plaintiff. Plaintiff's First Motion in Limine is therefore granted.

**Defendant's Motion in Limine No. 2**

Assuming Plaintiff makes a separate claim for breach of contract at trial, Defendant argues that its damages on the breach of contract claim are limited to the amount of liquidated damages payable upon dismissal without cause pursuant to *Dunlap v. Alcuin Montessori School*, 298 Ill.App.3d 329; 698 N.E.2d 574 (1998). Defendant maintains that *Dunlap* stands for the proposition that in a breach of contract claim, where a contract allows for dismissal without cause, any damages arising from a breach of contract are limited to those specified in the without-cause provision. *Id.*, at 578-79.

Plaintiff responds that the District's interpretation of the contract language would turn the contract into an at-will employment agreement. As interpreted by state and federal courts reviewing substantially similar contract provisions, this is essentially true. The language has been held to be an enforceable early termination provision that allows the district to terminate the contract "for whatever reason" as long as it paid the specified damages. In fact, the Court has previously stated that had Defendant not subsequently taken inconsistent positions, it would likely have been entitled to summary judgment in its favor. *See McArdle v. Peoria School District No. 150*, 705 F.3d 751,

755 (7th Cir. 2013) (finding that termination "for whatever reason" pursuant to an early termination clause with payment as specified in the contract does not constitute a breach of contract); *Jones v. Chicago State University*, ___ N.E.2d ___, 2009 WL 9438996, at *2 (Ill.Ct.Cl. Sept. 9, 2009).

Generally, the proper measure of damages in a breach of contract action is "the amount of money that will place the injured party in as satisfactory a position as he would have been in had the contract been performed." *Cress v. Recreation Services, Inc.*, 795 N.E.2d 817, 850 (2nd Dist. 2003). However, the rights of parties to a contract are limited by the terms of the contract itself, and under Illinois law, parties to a contract can limit remedies and damages for breach if their understanding is reflected in the agreement. *Cress*, 795 N.E.2d at 850-51, *citing Klemp v. Hergott Group, Inc.*, 641 N.E.2d 957 (1994). Where a contract specifically provides for an early termination provision, those provisions will determine the measure of damages reasonably related to the breach. *Dunlap*, 698 N.E.2d at 336-37. Section 3(e) of the amended agreement states that in the event of early termination, Plaintiff is entitled to "ten (10%) percent of the Comptroller-Treasurer's unpaid annual salary computed from the effective date of the notice of termination to June 30 of that Contract year, but in no event less than $5,000.00." The Court agrees with Defendant that this limits the damages available to Plaintiff on her breach of contract claim in the event that the jury finds that there was a breach by the Board.

Defendant next argues that the multi-year contract at issue is void because it didn't comply with the Illinois School Code's requirement that multi-year contracts for school district administrators contain goals and indicators of student performance as required by 105 ILCS § 5/10-23.8a. This argument is without merit. The plain language of § 10-23.8a applies to the contracts of principals, assistant principals, and other administrators whose responsibilities and duties involve

4

student performance and academic improvement through instructional leadership and the planning, operation, and evaluation of the educational program at the school. Plaintiff was the comptroller/treasurer, and nothing in the record suggests in any way that student performance and academic improvement are attributable to her responsibilities and duties as such. Accordingly, the Court finds that § 5/10.28a does not apply to Plaintiff's contract.

For its third issue, Defendant cites *Parks v. Wells Fargo Home Mortgage, Inc.*, 398 F.3d 937, 940 (7th Cir. 2013), for the proposition that Illinois law does not generally allow punitive and emotional distress damages for breach of contract. The exception to this general rule is when "the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result," which does not apply in the context of an employment agreement. *Id.*, at 940-41; *Hanumadass v. Coffield, Ungaretti & Harris*, 311 Ill.App.3d 94, 724 N.E.2d 14, 18 (1999). Under *Parks*, even if a separate breach of contract claim is presented at trial, punitive and emotional distress damages would not be available for that claim.

Fourth, Defendant argues that Plaintiff is limited to nominal damages on her due process claim. The Seventh Circuit has held that "a plaintiff who succeeds on a procedural due process claim is entitled to those damages that are caused by the denial of the process required by the Constitution." *Alston v. King*, 231 F.3d 383, 386 (7th Cir. 2000). Where the termination is causally connected to the failure to provide a hearing, the plaintiff can recover damages for the termination; conversely, where the employer proves that the employee would have been terminated even with a proper hearing, the employee cannot receive damages stemming from the termination. *Id.*; *Carey v. Piphus*, 435 U.S. 247, 267 (1978).

Here, precedent in the Seventh Circuit holds that under the terms of contracts substantively similar to Plaintiff's contract, a school board is entitled to dismiss an employee either with or without cause. *McArdle*, 705 F.3d at 755. As a result, Defendant asserts that a due process hearing would not be outcome determinative in this case. Rather, a hearing would only determine whether Plaintiff is entitled to the amount of damages specified in the early termination provision (i.e., $5,000.00) or nothing at all. Defendant therefore maintains that damages flowing from the denial of due process itself are nonexistent and would be limited to nominal recovery of $1.00.

Plaintiff responds that she may still recover more than nominal damages for emotional distress if she can prove that she suffered distress attributable to the denial of procedural due process rather than the justified termination of her employment. *Carey*, 435 U.S. at 263; *Alston*, 231 F.3d at 386. While the Court finds that Defendant's point may ultimately be well taken, a definitive ruling on this issue must await the development of Plaintiff's case at trial.

Finally, Defendant objects to the inclusion of four categories of economic damages claimed by Plaintiff, namely: (1) lost social security/medicare/pension contributions; (2) interest on the mortgage for her Florida home; (3) lost rental income from her Florida home; and (4) the amount of the uncashed check which the District paid upon her dismissal. Plaintiff concedes that she is not entitled to recover the mortgage interest or lost rental income for her Florida home, as well as her portion of any contributions to social security/medicare/pension. However, the lost social security/medicare/pension contributions that would have been contributed by the employer could potentially be recoverable under *Alston* if they are shown to have been caused by the denial of the process required by the contract. The uncashed check, which included amounts for liquidated damages and unused vacation time, issued to Plaintiff is argued to be duplicative, as it has already

6

been tendered. The Court agrees that this amount would appear to be duplicative, but for different reasons. If Plaintiff can show that the District actually terminated her for cause and was denied procedural due process, her termination would have fallen under the for cause provision in the contract, and she would not be entitled to any amount of liquidated damages under the without cause provision. The only relevance of this category of damages is in the event that the jury agrees with Defendant that Plaintiff was terminated under the no-cause provision of the contract.

## CONCLUSION

For the reasons set forth above, Plaintiff's First Motion in Limine [42] is granted. Defendant's Motion in Limine No. 1 [36] is granted, and Motion in Limine No. 2 [44] is granted in part and denied in part.

ENTERED this 1st day of May, 2014.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge